UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Mallory O'Shea, Administrator of
the Estate of Stanley Sewall, and
Diane Sewall,
      Plaintiffs

v.                                    Case No. 23-cv-230-SM-AJ
                                      Opinion No. 2024 DNH 010

Woodbine Senior Living, LLC;
Beacon Hospice, LLC; and
Wentworth Homecare and Hospice, LLC,
      Defendants


**O R D E R**


     Mallory O'Shea, as the administrator of the estate of

Stanley Sewall, and Diane Sewall (Mr. Sewall's widow) bring this

suit advancing various common law and state statutory causes of

action - all arising out of the allegedly negligent care

defendants provided to Mr. Sewall.  Plaintiffs assert that the

parties are diverse because Mr. Sewall was a citizen of Maine

when he died, so the court may properly exercise subject matter

jurisdiction under 28 U.S.C. § 1332.  Two of the named

defendants - Beacon Hospice and Wentworth Homecare and Hospice -

disagree and move to dismiss, asserting that Mr. Sewall was a

citizen of New Hampshire when he died, the parties are not

diverse, and the court is without subject matter jurisdiction.

See Fed. R. Civ. P. 12(b)(1).  Plaintiffs and defendant Woodbine
Senior Living object.

The arguments offered by the parties succumb to the
familiar problem of raising more issues than are resolved, as
explained below.  All parties seems to agree (perhaps
incorrectly) that Mr. Sewall (who was suffering from dementia)
changed his domicile from Maine to New Hampshire when he moved
to a care facility in New Hampshire.  If that was the case,
there can be no diversity unless he changed his domicile back to
Maine prior to his death.  Yet, the plaintiffs make no
allegation that he was ever physically present in Maine after
having moved to New Hampshire (a necessary element to change his
domicile).  Further complicating matters is this: despite the
parties' agreement on the issue, the pleadings are not
persuasive that Mr. Sewall changed his domicile to New Hampshire
in the first place; he may have remained a domiciliary of Maine
throughout his stay in New Hampshire and until his death.

For the reasons given, the motion to dismiss is granted,
for now, but without prejudice to plaintiffs filing an amended
complaint in which sufficient provable facts are alleged that,
if true, would support a finding that Mr. Sewall was a citizen
of Maine at the time of his death.

**Background**

Accepting the factual allegations of the Amended Complaint (document no. 11) as true, the following appears to be relevant. The late Mr. Sewall and his wife had been long-term residents of Poughkeepsie, New York.  Then, in May of 2021 (approximately 14 months before Mr. Sewall's death), the couple moved to York, Maine.  For purposes of resolving the pending motion to dismiss, the court will assume that Mr. Sewall became a citizen of Maine and that state became his domicile.

Mr. Sewall suffered from dementia and severe anxiety.  By the spring of 2022, he was having recurrent falls and exhibiting "exit-seeking" behavior from his home.  His children were concerned for his well-being and realized that their mother could no longer provide the kind of care and supervision that he required.  So, they began looking for a facility to care for their father and ensure his safety.

After conducting their research and relying, at least in part, on allegedly false and deceptive marketing materials they had received, the children decided to move their father to Spring Village at Dover, a residential care facility operated by defendant Woodbine Senior Living, LLC.  Mr. Sewall was admitted to Spring Village on June 1, 2022.  As described in the Amended

Complaint, Mr. Sewall suffered a series of falls, his family was unhappy with the care he was receiving, and they became increasingly worried about his well-being.

On June 26, Mr. Sewall had a serious fall.  He was found on the floor, bleeding from his head and complaining of hip pain. He was transported to the Emergency Department of Portsmouth Hospital, where he was admitted and diagnosed with a left hip fracture.  The decision was made that he would not return to Spring Village and, on June 30, Mr. Sewall was discharged from that facility.  Family members made arrangements to gather his furniture and personal belongings from Spring Village and return them to Maine.

Meanwhile, Mr. Sewall's family members were exploring options for his care once he was discharged from the hospital. They decided that, upon his discharge, Mr. Sewall would return home to Maine, where he would receive hospice care. Unfortunately, Mr. Sewall was never able to return to Maine.  On July 3, 2022, he died in Portsmouth Hospital as a result of "complications of left hip fracture, including an intraparenchymal hemorrhage, a type of stroke that was caused by bleeding in the brain sustained during the fall."  Amended Complaint at para. 56.  On April 11, 2023, plaintiffs filed this

suit seeking damages for defendants' allegedly negligent care of Mr. Sewall, breach of contract, and violations of New Hampshire's Consumer Protection Act.  Additionally, Mrs. Sewall seeks damages for loss of consortium.


**Discussion**

I.   <u>Diversity Subject Matter Jurisdiction</u>.

Plaintiffs bring only state causes of action. Consequently, the court may not exercise "federal question" subject matter jurisdiction over the case.  <u>See</u> 28 U.S.C. § 1331.  Instead, plaintiffs urge the court to exercise "diversity" jurisdiction under 28 U.S.C. § 1332.  For the court to do so, plaintiffs must demonstrate that: (a) the amount in controversy exceeds $75,000; and (b) the plaintiffs and the defendants are citizens of different states.  In this context, "citizenship" means domicile.  <u>See, e.g.</u>, <u>Hawes v. Club Ecuestre El Comandante</u>, 598 F.2d 698, 701 (1st Cir. 1979) ("For purposes of diversity jurisdiction under 28 U.S.C. § 1332(a)(1), state citizenship is the equivalent of domicile."); <u>Valentin v. Hosp. Bella Vista</u>, 254 F.3d 358, 366 (1st Cir. 2001) (same); <u>Bank One, Texas, N.A. v. Montle</u>, 964 F.2d 48, 49 (1st Cir. 1992) (same).


No one disputes that the amount in controversy exceeds the minimum jurisdictional threshold.  The dispositive question

presented is whether the parties are diverse.  The answer to
that question turns on the citizenship of Mallory O'Shea, in her
capacity as Administrator of the Estate of Stanley Sewall.
That, in turn, depends upon the citizenship (i.e., domicile) of
Mr. Sewall at the time of his death.  Under 28 U.S.C.
§ 1332(c)(2), for purposes of diversity jurisdiction, the legal
representative of the estate of a decedent is deemed to be a
citizen of the same state as the decedent.  See, e.g., King v.
Cessna Aircraft Co., 505 F.3d 1160, 1170 (11th Cir. 2007)
("Where an estate is a party, the citizenship that counts for
diversity purposes is that of the decedent, and she is deemed to
be a citizen of the state in which she was domiciled at the time
of her death.") (citations omitted).

     Importantly, a person's domicile is not necessarily the
same as his or her residence.  One can have several residences
but only one domicile.  "A person's domicile is the place where
he has his true, fixed home and principal establishment, and to
which, whenever he is absent, he has the intention of
returning."  Rodriguez-Diaz v. Sierra-Martinez, 853 F.2d 1027,
1029 (1st Cir. 1988) (citations and internal punctuation
omitted).  Once established, one's domicile remains the same
until all the conditions necessary to change it are present.
See, e.g., Acridge v. Evangelical Lutheran Good Samaritan Soc.,

334 F.3d 444, 448 (5th Cir. 2003) ("There is a presumption of continuing domicile that applies whenever a person relocates. In order to defeat the presumption and establish a new domicile (the 'domicile of choice'), the person must demonstrate both (1) residence in a new state, and (2) an intention to remain in that state indefinitely.  Mere presence in a new location does not effect a change of domicile; it must be accompanied with the requisite intent.") (citations and internal punctuation omitted); Padilla-Mangual v. Pavia Hosp., 516 F.3d 29, 31 (1st Cir. 2008) (same).

The parties recognize that if Mr. Sewall was a domiciliary of Maine when he died, diversity exists and this court may properly exercise subject matter jurisdiction.  If, on the other hand, Mr. Sewall was domiciled in New Hampshire when he died, diversity is lacking (at least one defendant is also a citizen of New Hampshire) and the case must be dismissed.  As the party invoking diversity jurisdiction, plaintiffs must demonstrate, by a preponderances of the evidence, that Mr. Sewall was a domiciliary of Maine at the time of his death.  See, e.g., Rodriguez v. Senor Frog's de la Isla, Inc., 642 F.3d 28, 32 (1st Cir. 2011).

II.  <u>Mr. Sewall's Domicile and the Parties' Arguments</u>.

It would seem that there are two plausible circumstances under which Mr. Sewall was a domiciliary of Maine when he died. First, it is possible that, despite having been moved to a care facility in New Hampshire, Mr. Sewall remained a domiciliary of Maine.  That is to say, notwithstanding his change in residency, his <u>domicile</u> remained in Maine (like, for example, a college student studying and residing in another state, but who has no intent to become a citizen of that state).  But, neither the plaintiffs nor the defendants who join in objecting to dismissal make that argument.

Of course, there is an alternate set of circumstances under which Mr. Sewall might be found to have been domiciled in Maine when he died.  He could have become a domiciliary of New Hampshire when he moved here but changed his domicile back to Maine immediately before he died.  That is the argument that plaintiffs (and the objecting defendants) make.  That is to say, they agree that upon moving to Spring Village, Mr. Sewall acted with the requisite intent (or those with authority to act on his behalf acted with such intent) to change his domicile from Maine to New Hampshire.  <u>See generally</u> <u>Acridge</u>, 334 F.3d at 448-50 (collecting cases that discuss the authority of a person to change the domicile of someone not competent to make that choice

on their own).  But, the argument goes, he changed his mind: after moving out of Spring Village and making plans to return to Maine following his discharge from the hospital, Mr. Sewall changed his domicile back to Maine.  That argument is, however, seemingly doomed by the facts as presented in the Amended Complaint.[1]

As noted above, for purposes of determining whether the court may properly exercise diversity jurisdiction, the concepts of "citizenship" and "domicile" are synonymous.  And, to resolve the pending motion to dismiss, the court must determine Mr. Sewall's citizenship (i.e., domicile) at the time of his death. As the court of appeals for this circuit has noted,

> Citizenship is determined by domicile, which can be established by demonstrating that the individual is physically present in the state and has an intent to remain indefinitely.  Once challenged, the party invoking diversity jurisdiction must prove domicile by a preponderance of the evidence.  The key point of inquiry is whether diversity of citizenship existed at the time the suit was filed; subsequent events may bear on the sincerity of a professed intention to remain but are not part of the primary calculus.

---

[1]    Plaintiffs acknowledge that this position is inconsistent with the factual allegation set forth in paragraph 11 of the Amended Complaint - i.e., that Mr. Sewall's "last domicile" was New Hampshire.  The Amended Complaint, they say, contains an erroneous allegation.

Garcia Perez v. Santaella, 364 F.3d 348, 350–51 (1st Cir. 2004)
(emphasis supplied; citations omitted).

Thus, to establish "domicile" in a particular state, one
must demonstrate two things: first, a physical presence in that
state; and, second, an intent to remain there indefinitely (and,
when absent from that state, an intent to return).  See, e.g.,
Valentin, 254 F.3d at 366 ("Domicile requires both physical
presence in a place and the intent to make that place one's
home.  It follows logically that in order to change domiciles, a
person must move to a new state in which she intends to remain
indefinitely.") (emphasis supplied); Bank One, Texas, 964 F.2d
at 50 ("Montle needed to do two things to effect a change in his
domicile: he had (1) to be present in the new domicile, and (2)
to intend to remain there.").  Indeed, one of the primary cases
upon which plaintiffs (and the objecting defendant) rely stands
for precisely the same proposition of law.  See Padilla-Mangual,
516 F.3d at 31–32 ("To sustain his burden, Padilla was required
to show two things in order to establish a change in his
domicile from Puerto Rico to Florida: (1) presence in Florida,
and (2) an intent to remain there.") (emphasis supplied).
Intent to changes one's domiciliary, standing alone, is not
sufficient.

Here, while Mr. Sewall (or those with authority to make such decisions on his behalf) may well have intended to return to Maine and restore it as his domicile upon his discharge from the hospital, he never actually returned.  That is, before he died, Mr. Sewall did not establish a physical presence in Maine. That failure/inability of Mr. Sewall to return to his former home would seem to preclude a change in domicile.  In short, one of the two essential elements necessary to reestablish a domicile in Maine - physical presence - is missing.  Without it, the court cannot conclude that Mr. Sewall changed his domicile back to Maine immediately prior to his death – again, if finding such a change in domicile is necessary for the court to conclude that parties are diverse; as mentioned earlier, it is conceivable that Mr. Sewall remained a domiciliary of Maine all along.

## Conclusion

In light of the sparse jurisdictional facts of record, the court is constrained to conclude, for now, that at the time of his death, Mr. Sewall was a citizen (i.e., domiciliary) of New Hampshire (as the parties seem to agree he became a citizen of New Hampshire at some point).  That, in turn, means that the executor of his estate is also deemed to be a citizen of New Hampshire and diversity is lacking.

Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (**document no. 16**) is granted, but without prejudice to plaintiffs filing, within 45 days, an amended complaint that adequately alleges jurisdictional facts sufficient, if true, to support a finding that, at the time of his death, Mr. Sewall was domiciled in Maine.  Failure to file such an amended complaint will result in dismissal without further leave to amend.

As noted above, it is possible that despite moving to a residential care facility in New Hampshire, Mr. Sewall's domicile remained in Maine all along.  It is entirely unclear, however, whether the facts would support an argument along those lines.  See generally Fed. R. Civ. P. 11(b)(3).  The nature of Mr. Sewall's cognitive difficulties, the nature of the decisions made on his behalf and the authority to make such decisions, and the actions taken on behalf of Mr. Sewall would all be relevant.  See generally Garcia Perez v. Santaella, 364 F.3d 348, 351 (1st Cir. 2004) (discussing the factors that can be relevant when determining whether a person has changed their domicile).

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

February 9, 2024

cc:   Counsel of Record